**Dan STEWART, Plaintiff in Error,**
v.
**The STATE of Oklahoma, Defendant in Error.**
**No. A–14047.**

Court of Criminal Appeals of Oklahoma.
Dec. 13, 1967.
Rehearing Denied Dec. 29, 1967.

W. Carl Nixon, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Jeff Hartman, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge:

Dan Stewart, hereinafter referred to as the defendant, was charged with the crime of Murder (Felony) in Cleveland County. He was tried before a jury, found guilty, and his punishment fixed at Life imprisonment in the penitentiary. Defendant perfected his appeal to this Court asserting numerous assignments of error upon which he relies for reversal.

This charge of murder arose out of the defendant running over a man working on the highway between Norman and Oklahoma City. The highway employee was killed as a result thereof. Defendant was allegedly intoxicated when he ran over the deceased, and having had previous convictions for drunk driving, he was charged under the Felony-Murder statute, pertaining to Drunk Driving and Homicide. To drive an auto while under the influence of alcohol after having been previously convicted for same, constitutes a felony. The statute further provides that causing the death of a human being while in the commission of a felony, constitutes murder. Thus the charge in the instant case.

This Court has thoroughly examined the briefs filed herein along with the casemade, and have come to the conclusion that it is only necessary to deal with the contention of error pertaining to the admissibility of evidence.

It is revealed by the casemade that defendant was taken in custody by the City

Police of Moore and held until the Highway Patrol transported the defendant to the County Jail in Norman. There he was taken to a room equipped for taking moving pictures of the defendant while performing various tests under the direction of an officer. These tests consisted of such things as: walking a straight line, picking up coins from the floor, standing erect with head turned up as if looking at the ceiling with eyes closed, then touching nose with his finger. These tests are often referred to as "Sobriety Tests" or "Alcoholic Influence Tests". During the time the tests were being performed by defendant at the direction of an officer, a .16 mm. camera was taking pictures of defendant's actions, demeanor, and conversation. The beginning of the picture reveals that the officer directing defendant's actions told the defendant " * * * that it was his constitutional right to refuse". The film reveals that in response to this, *defendant said nothing*; and the moving picture camera kept on grinding away while defendant tried to comply with Officer Pryor's directions. According to the testimony of Officer Pryor, this was the only admonition given to the defendant.

■ This hardly complies with the rule adopted by this Court in Spencer v. State, Okl.Cr.App., 404 P.2d 46. In that case, the identical question was presented to the Court, and in adopting a rule as to the admissibility of films taken of defendant while performing "Alcoholic Influence Tests", the Court had this to say:

"Showing of films taken of defendant while performing tests under direction of the police without his knowledge or consent constitutes a violation of Article 2, Section 21, of the Bill of Rights, as compelling defendant to give evidence tending to incriminate himself."

The Court further said:

"Moving pictures taken of defendant during an alcoholic influence test, under the direction and upon instructions from the police are inadmissible in the trial of a case unless it be shown that they were taken with knowledge of defendant, and upon his own volition freely and voluntarily consented to the taking of said pictures after being advised of his constitutional rights against self-incrimination."

In the instant case, no effort was made to show that defendant was advised as to his rights involving self-incrimination. He was never advised that said films could or would be used against him in the trial. The only admonition given the defendant was that " * * * they were going to take pictures while he performed certain tests and he had a constitutional right to refuse". To this admonition, defendant remained silent.

■ It is well recognized that silence does not waive one's right against self-incrimination.

■ This Court is of the opinion that the admonition, as required under Spencer v. State, supra, was not sufficient in the instant case to make the film admissible, and they should have been excluded.

In the case at bar, the films were made with sound. A re-play of the films by this Court revealed that during the film, defendant was interrogated with such questions as:

"Have you been drinking?"

"Are you hurt or ill?"

"Have you been drinking since the accident", etc.

The questions propounded were of a very incriminating nature. They were asked defendant without his being advised that he was entitled to counsel, had a right to remain silent, and that any answer could and would be used against him, and that he was entitled to counsel before answering any questions.

*None* of the admonitions as required by Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); and, Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, were given defendant.

This Court can see little—if any—difference in a confession being taken without any admonition; and a film of defendant being interrogated relative to incriminating matters without being advised of his constitutional rights.

■ If the films had been taken with the consent of defendant as set forth in the Spencer case, supra, they would have been admissible—*without sound*. But, where the sound reveals interrogation of incriminating matters, defendant should have been advised of his right to counsel, as required under the Escobedo and Miranda cases, supra.

We therefore conclude that the film was inadmissible, and ordinarily would be error of such a nature as to cause reversal, but a review of the entire record reveals ample testimony to the effect that the defendant was under the influence of intoxicating liquor.

The state produced numerous witnesses who had observed the defendant the day of the collision. *Iola Mangham* testified she saw defendant and John Stewart about 2:30 on the day of the accident, and stated defendant had been drinking, and was a "little bit wobbly" and that "she smelled it on their breath". *John D. Stewart* stated he saw defendant that morning about 7:30. He went with defendant to cash a check and then to a liquor store where defendant purchased a pint of grape vodka. After the bottle had been consumed, they returned to a liquor store several hours later and purchased another pint. Stewart further testified that during the day he observed 3 bottles of grape vodka in defendant's car, but was not sure if all of the bottles had been consumed. The time element from the first bottle until he left defendant's company, was 10:00 A.M. until 3:00 P.M. *Highway Patrolman William N. Pryor* testified he investigated the collision and arrested the defendant for public drunk. That he observed the defendant and in his opinion, he was intoxicated. *Gary Robinson,* a deputy sheriff, testified that he saw the defendant when they brought him to the Cleveland County Jail,

and in his opinion, defendant was under the influence of alcohol. *Albert Dodd,* Evidence and Parole Officer of Cleveland County, observed defendant as they brought him out of the courthouse. That he thought defendant was under the influence of intoxicating beverages. *Glen Dale Brasier* testified he saw defendant's car hit the deceased and tried to stop defendant, and eventually pulled in front of him, jumped out, and took the keys out of defendant's car, approximately 1000 feet from the scene of the impact. He testified defendant was slumped over the steering wheel, mumbling utterances that he could not understand. That he tried to talk, but his words were not plain. He further testified that there were two half-pints empty whiskey bottles in the car. *Jimmy Dodd,* an officer from Moore, Oklahoma, who arrested defendant at the scene of the collision, testified when he approached the car defendant was slumped over the wheel. He asked him to get out of the car and defendant mumbled something. He advised him he was under arrest and had to help him out of the car. That he could not walk unassisted, and that in his opinion, he was drunk. In addition to these witnesses, the defendant voluntarily consented to a blood test, which was analyzed by a chemist of the State Health Department, who testified there was .23 per cent by weight of alcohol present. *Dr. Silman* testified .15 per cent indicated sufficient alcohol in the blood according to the 'Standards of American Medical Association' to cause one to be under the influence of alcohol. He further said a person whose blood shows .23 per cent would exhibit gross evidence of intoxication.

Defendant did not testify, but produced two witnesses: *Billy Frank Pennington* and *Dr. P. D. Langerman, Jr. Pennington,* the defendant's son-in-law, testified defendant had sustained an injury to his eye a few days prior to the collision and was hospitalized from Friday until Saturday before the accident on Monday, the 8th. That he was given medication. That he saw him take three pills in the morning of the 8th.

That he was not intoxicated at 7:30 that morning. *Dr. Langerman* testified as to the injury to defendant's eye, and that he was hospitalized approximately 36 hours for observation. That he prescribed two different type drugs for defendant: Perkadine for pain, and anodyne to reduce swelling. That to take more than the prescribed dosage along with alcohol would impair his ability to drive. Evidently, the defense was attempting to leave the impression that the defendant was under the influence of prescription drugs.

The jury chose to believe otherwise, and that was within their province.

■ This Court is of the opinion that without the film being introduced, the evidence as to defendant's intoxication was sufficient to support a conviction. This Court stated in Cox v. State, Okl.Cr.App., 395 P.2d 954:

"* * * Furthermore there was abundant evidence outside of the tests to support the state's theory of his intoxication and we would not reverse the case on the ground that the result of these tests was inadmissible as having been forcibly given in violation of the constitutional rights of the accused."

There is little doubt in this Court's mind that the films were prejudicial to the defendant, as indicated by the jury's rendition of Life imprisonment.

NEVER BEFORE HAS THIS COURT DEALT WITH A LIFE SENTENCE IN SUCH A CASE. This type crime is unique in that there is no premeditated design to take life; no malice aforethought; and no intent—and, none is required.

This Court is aware that a drunk driver upon a public highway is a dangerous and deadly weapon looking for a place to strike, and is one of the greatest hazards stalking our society today.

The drunk driver should be dealt with severely, but in the instant case, we feel incompetent and prejudicial testimony prompted the jury to render a life sentence.

Therefore, this Court is of the opinion that justice will be best served by reducing the charge to Manslaughter First Degree, and modifying the sentence to Twenty-Five (25) Years in the penitentiary; instead of Life Imprisonment, and it is so ordered.

The judgment and sentence of the District Court of Cleveland County, Oklahoma, as so modified, is affirmed.

BRETT, J., concurs.

BUSSEY, J., concurs in result.