**Claudia Jean HENSON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–192.**

Court of Criminal Appeals of Oklahoma.

May 8, 1974.

Rehearing Denied May 28, 1974.

Raymond Burger, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Linda Frye, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant, Claudia Jean Henson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Case No. CRF–72–1770, for the crime of Manslaughter in the First Degree. She was sentenced to serve a term of ten (10) years in the State Penitentiary in accordance with the verdict of the jury, and a timely appeal has been perfected to this Court.

During the trial, Jerry Lee Guinn testified that on July 25, 1972, he was a detec-

tive with the Oklahoma City Police Department, assigned to the Homicide Division, and was dispatched to 227 S.E. 26th Street in Oklahoma City, Oklahoma, which was the residence of J. W. Beckman, the defendant's brother. Upon arrival at said location, Guinn met Officer Joel Manning of the Oklahoma City Police Department, who was the first officer to arrive at the scene. According to Guinn, Manning showed him a body of a white male, later identified as David Lee Hickey, lying some two hundred feet from the Beckman residence in the 200 block of S.E. 26th Street. Guinn related that Hickey had received a stab wound in the upper left chest and that a butcher knife was laying a few feet from Hickey's body. Subsequently, Guinn entered the Beckman residence. Upon entering the said residence, Guinn observed a clump of hair, dark brown in color, on the porch as well as several droplets of blood. Several beer cans were also on the porch. Guinn observed another clump of dark brown hair south of the kitchen door. In the kitchen, Guinn observed a pulled out kitchen drawer which contained silverware.

Guinn further related that defendant along with two male witnesses present at the time of the stabbing were taken to police headquarters. Guinn stated that he read to defendant her constitutional rights, that defendant indicated that she understood her rights, and that defendant voluntarily signed a waiver of her rights (State's Exhibit 1). Following this waiver, defendant related to Guinn a story as to what events transpired on the day in question. Guinn then separately questioned each of the two male witnesses. He then questioned the defendant again. At this time, the defendant related to Guinn a different story as to what events transpired on the day in question. Defendant stated to Guinn that at about 1:30 a.m. on the day in question, she and her boy friend arrived at her brother's house. The deceased was sitting on the front porch. Guinn stated that the defendant related that she got into an argument with Hickey and grabbed and pulled him by the hair. Defendant then went into the kitchen. The deceased followed her into the kitchen. Defendant found a knife in a drawer. The deceased reached out and grabbed her, tore her blouse, and she swung blindly and struck him with the knife. The deceased fled the house and fell to the ground approximately three houses from the Beckman residence.

On cross-examination Officer Guinn stated that a third interrogation of defendant resulted in a recorded voluntary statement by defendant as to what events occurred on the day in question. This statement disclosed, in substance, the same events that defendant's second story related.

Gary James, Identification Technician with the Oklahoma City Police Department, took the stand and identified various photographic exhibits which corroborated Guinn's testimony as to the location of the deceased's body, the location of the knife, and the general condition of the Beckman residence on the day in question. James identified exhibit 15 as the knife found at the scene.

It was stipulated between the State and the defendant that the medical examination of the deceased disclosed that he died of a single stab wound which penetrated the left lung and heart and that a person with this type stab wound could have walked the distance from the Beckman house to the area where the deceased was found. It was further stipulated that said examination was made by a licensed physician under the laws of Oklahoma, competent to perform an autopsy and express opinions as to the results of the autopsy.

During the State's case in chief, defendant had a hearing outside the presence of the jury introducing evidence to show that the defendant was a severe diabetic and that during the interrogation period certain statements made by defendant could not be deemed to be voluntary. The defendant offered no evidence in behalf of her defense.

Defense counsel argues in his first proposition that the trial judge should have

suppressed the statements made by defendant during police interrogation. The evidence adduced at a hearing held in camera revealed defendant, after being advised of her rights and signing a statement that she fully understood those rights, made two statements. After the first statement was given, the interrogating officer questioned two men who were at the scene of the homicide. He returned, informed the defendant that the stories related by these two men and her story were inconsistent. Defendant then stated the first statement she gave was false and then related the events as stated in the above statement of facts. The interrogating officer, Officer Guinn, testified that during questioning the defendant was nervous and her eyes were red, apparently from crying. However, he stated she was fully cognizant of what was going on, related the events as they transpired in detail, and appeared to know what she was doing. Finally, Guinn stated he was not informed defendant was a diabetic until after interrogation. Defendant testified that she was a severe diabetic. Her condition required one Insulin shot each morning and four urine tests per day to control blood sugar. At 8:00 p.m. on the evening prior to the homicide, she administered to herself an Insulin injection. However, she had not received one immediately prior to interrogation. Defendant explained her Insulin shock attacks were sudden, without warning and varied in severity. Defendant stated that during interrogation, she was suffering from Insulin shock and she did not recall the events which transpired on the prior evening.

■ It is a well settled rule that when the defendant challenges the admissibility of a statement or confession, the burden is on the State to show that it was voluntary. See State v. Harp, Okl.Cr., 457 P.2d 800 (1969). It is our opinion that the evidence adduced at the in camera hearing is sufficient to support the trial court's determination the confession was voluntary. We therefore find the court did not err in admitting these statements made by the accused as there is sufficient evidence adduced at that hearing to support the trial court's factual determination of voluntariness.

■ In defense counsel's second proposition, he argues the evidence is insufficient to support the jury's verdict. We find this contention to be without merit. The evidence sufficiently proves the corpus delicti. The defendant's statements, as we have previously stated, were admissible, and are sufficient to prove the remaining elements of Manslaughter in the First Degree. Consequently, the evidence is not insufficient. See Osborn v. State, 86 Okl.Cr. 259, 194 P.2d 176 (1948).

■ In defendant's third proposition of error he generally argues the trial court erred in not instructing the jury on "statements, declarations, and confessions." Counsel submits no authority in support of his argument. In Sandefur v. State, Okl. Cr., 461 P.2d 954 (1969), this Court stated as follows:

"It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citations of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will not search the books for authorities to support the mere assertion that the trial court has erred. See: Collins v. State, Okl.Cr., 407 P.2d 609."

Considering counsel for defendant did not file at the trial written requested instructions on statements, declarations, and confessions; and, further considering the evidence for the jury's consideration did not support an instruction upon the voluntariness of the statement, see Davis v. State, Okl.Cr., 437 P.2d 271 (1968), we find this proposition to be without merit.

In defendant's final proposition he argues the trial court should have instructed the jury on the statement made by defendant. Generally counsel's argument in this proposition alludes to the conclusion that the jury should have been charged if

the statement was believed the jury should find defendant not guilty. Officer Guinn testified at page 41 of the transcript as follows:

"She said that she became involved in an argument with Mr. Hickey pertaining to what he was doing at her brother's house; and that they got into a fight. She said she grabbed him by the hair, pulled his hair. They got into a cuss fight with one another and she went into the house, to the kitchen.

"She said that she went into the kitchen and opened a drawer; couldn't find any knives in one drawer. Opened a second drawer; found a knife in the second drawer.

"At this time, the deceased had followed her into the kitchen. She said that when she found the knife in the second drawer, that the deceased reached out and grabbed her. At this time, he tore her blouse and her bra. She swung blindly at him with the knife and stuck him with the knife."

█ The statement of the defendant does not justify an instruction charging the jury with the burden of acquittal if the statement is believed. It does, however, raise the defense of self-defense and places within the province of the jury a determination of whether defendant used more force than necessary to repel her attacker. Considering, no evidence was presented by the defense with the fact the trial court did instruct the jury upon the theory of justifiable homicide, we find the instructions considered as a whole adequately instructed the jury on its consideration of defendant's statement. The only evidence presented on the theory of self-defense came from defendant's statement. The instruction on the theory of self-defense was sufficient to charge the jury with proper consideration of this statement.

The judgment and sentence is affirmed.

BUSSEY, J., concurs.

BRETT, J., dissents.