James Kelly McCOY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–757.

Court of Criminal Appeals of Oklahoma.

April 22, 1975.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David K. McCurdy, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, James Kelly McCoy, hereinafter referred to as defendant, was charged, tried and convicted, in the District Court, Oklahoma County, Case No. CRF–73–3574, for the offense of Robbery With Firearms, in violation of 21 O.S., § 801. His punishment was fixed at seventy-five (75) years' imprisonment. From said judgment and sentence he has perfected his timely appeal to this Court.

At the trial William Leroy Gregg testified he was the pharmacist and owner of the Wheeler-Stuckey Pharmacy located at 1215 North Walker, Oklahoma City, Oklahoma. He testified that he opened the pharmacy at approximately 7:30 a. m. At approximately 8:40 a. m., he, an assistant pharmacist Gary Mantooth, and their deliveryman Charles Cunningham were present when defendant entered the store. After entry defendant pulled a pistol and said, "This is a holdup, I want your narcotics." (Tr. 23) Mr. Gregg replied that the narcotics were in the safe in the back of the pharmacy. Defendant directed Gary Mantooth to lie on the floor and accompanied Gregg to the safe where the narcotics were kept. Gregg delivered three cigar boxes containing all the Schedule II narcotics he had in the safe. Defendant then directed Gregg to the cash register where he was ordered to deliver money that was contained therein. After delivering approximately $400.00 to defendant, Gregg was forced to lie on the floor immediately prior to defendant making his escape. As defendant left, Mantooth observed the license number of the vehicle which defendant was driving and read the number to Gregg. Gregg, testified that throughout the interval, in which he was following the directions of defendant, defendant repeatedly threatened his life to force his cooperation. Gregg identified State's Exhibits Nos. 1, 2, 3 and 4 respectively as the overcoat similar to the one the defendant wore on the above date, a gun similar to the one the defendant had in his possession at the time of the robbery, and the cigar boxes which contained the narcotics which had been taken from his pharmacy.

Gary Mantooth, the assistant pharmacist at the above store, testified that he was present on the morning of the above incident. Mantooth testified that at the above mentioned time he observed defendant enter the store, walk to the front of the cash register, lift his sweater and brandish a firearm. Substantially Mantooth testified to the same events as Gregg adding that on the afternoon of the above incident he appeared at a police lineup with Gregg and identified defendant as the person who committed the above robbery.

Charles E. Cunningham testified he was the deliveryman present at the time of the pharmacy robbery. His testimony in substance was the same as the witnesses who previously testified and additionally provided identification of State's Exhibits

Nos. 1 through 4. Cunningham also testified he appeared at the lineup on that afternoon and identified defendant as the robber.

Freddie Moss testified that on December 10, 1973, he was employed as a parking lot attendant at the Skirvin Hotel. On that morning, between 7:30 and 8:00 a. m., he received a claim check from defendant and gave him a set of keys.

Eugene Dennison, a Skirvin Hotel bellman on duty at approximately 9:30 a. m. on the above morning, testified that he observed defendant bring a dark 1973 Oldsmobile to be parked in the hotel parking lot. Dennison could not positively identify defendant as the driver of the vehicle, however, he testified it was a person similar in appearance to defendant.

Detective Leroy Rhinehart of the Oklahoma City Police Department testified that on December 10, 1973, at approximately 3:30 p. m., his investigation revealed a 1973 Oldsmobile, bearing a Texas license tag number identical to the one reported to him from the scene of the robbery, was overdue in the Dallas Budget Rent-A-Car Agency. He further determined that this vehicle had been rented to a Jack Donald Ramsey. An inquiry at the Skirvin Hotel revealed that a person had checked in to the hotel by that name. Defendant was arrested in a room which was registered to Ramsey. Following a search of the room State's Exhibits Nos. 1 through 7 were found. Additionally, Rhinehart identified State's Exhibit No. 7, a sack containing miscellaneous drugs, needles, bottles and syringes. Also identified was State's Exhibit No. 8, an envelope which contained approximately $188.43. Rhinehart testified that defendant appeared to be under the influence of drugs at the time of the arrest, however, he was cognizant of the events which transpired at that time.

Detective Harold Neal, vice officer with the Oklahoma City Police Department, testified that he was present at the time defendant was arrested. Substantially, his testimony corroborated that testimony of Detective Rhinehart adding further that on December 10, following a proper Miranda warning, he interrogated defendant at which time the defendant admitted he committed the robbery,

Thereafter the State rested.

Maynard Tinkham, a registered nurse and assistant administrator of the Methadone Drug Treatment Center in Oklahoma City, Oklahoma, testified that on December 11, 1973, he administered 20 milligrams of Methadone to defendant. At this time defendant was showing signs of narcotic withdrawal. Tinkham testified that in his opinion at the time he administered Methadone to the defendant, defendant was not able to "logically engage in conversation." (Tr. 178) He was able to converse but not as coherently as the average person and further stated that his primary concern would be getting relief from the withdrawal symptoms.

Thereafter the defense rested.

■■■ In defense counsel's first proposition, it is generally submitted the evidence does not support the verdict. We have carefully studied the transcript of trial proceedings and find the evidence to be sufficient to establish all elements of the offense of robbery with a dangerous weapon and legally sufficient to identify the defendant as the person who committed this offense. It is generally the province of the jury to weigh the facts and determine the guilt or innocence of the accused. There is competent evidence in the record to support the jury's finding and, consequently, we will not disturb their verdict on appeal. See, Jones v. State, Okl.Cr., 468 P.2d 805 (1970).

■■■ In defense counsel's second proposition, it is urged that the Court should review the punishment assessed by the jury. Noting the circumstances surrounding the event in question and the fact the jury imposed a penalty well within the statutory range, we find no basis for the punishment being imposed upon any consideration other than the evidence presented at trial.

Therefore, the facts and circumstances do not support modification. The penalty, in light of the evidence adduced at trial, does not shock this Court's conscience. Consequently, we do not find ground for modification of defendant's sentence. See, Jackson v. State, Okl.Cr., 494 P.2d 358 (1972).

▆ Next it is urged the admission made by defendant at the time of the arrest should have been suppressed. In analyzing this contention, we note the evidence adduced at the in camera hearing revealed that at the time of defendant's arrest he was advised of his rights under the provisions of Miranda v. Arizona. At this time officers who testified at the hearing testified they observed two syringes, one partially filled implying it had been to inject a drug a short time prior to the arrest. Upon defendant's arrest he was informed of his rights under the provisions of Miranda v. Arizona. Approximately one hour following the arrest, while defendant was apparently still under the influence of a drug, defendant made a statement regarding his participation in the above mentioned offense. Neal stated that while defendant was making this statement defendant was coherent but spoke slowly. Subsequently, on the morning of December 11, Neal interviewed the defendant for a second time. Defendant was interviewed and halted for a lunch break and then resumed on the afternoon of that same date. During the morning defendant appeared to be "shakey," (Tr. 124) and on the following afternoon he continued to appear shaky but was feeling noticeably better. Neal testified that during this interview defendant's speech patterns remained consistent and did not change throughout the morning and afternoon interviews, and that he determined that defendant articulated slowly. Neal finally stated that it was apparent to him that defendant, during the entire second interview, was cognizant of his rights. Further, throughout the entire interview defendant did not have difficulty in understanding his questions and, although he did have some difficulty in articulating his thoughts in a logical sequence, his answers were carefully thought out and he was coherent.

Defendant testified that on December 10 and 11, 1973, he classified himself as a "hardcore" drug addict. He was taking "death shots" every four hours and on the day of his arrest he was taking Cocaine, Dilaudid, and Morphine shots. On the evening he was arrested the defendant testified that after his arrest he became sick and he was transported to a hospital and given an injection. He continued to be sick throughout the night and on the following morning a person, who he learned later was Mr. Tinkham, gave him an injection of Methadone. Defendant related that during the interviews he was sick and the record of his testimony was in substance that he was unaware of what was going on at the time of the interviews. Defendant did not testify that he was induced into interview with the officers by promise of receiving treatment for his physical condition.

Thereafter, the in camera hearing was concluded and the jury was returned to the jury box. Subsequently, defendant presented his defense and one witness who testified, Maynard Tinkham, testified to facts pertinent to the admissibility of the statement. Mr. Tinkham, a registered nurse associated with the Methadone Treatment Program, testified that on December 11, 1973, at approximately 2:30 p.m., he administered 20 milligrams of Methadone to the defendant. Tinkham testified the average dose for an addict is 40 milligrams and that it varied from person to person as to whether being high on a narcotic would cause the person to lose consciousness and awareness of his surroundings and the significance of his actions. He related that he would be unable to give an opinion regarding the defendant and his awareness of his circumstances for this reason.

Defendant urges that in light of the above evidence the statements made while he was still in custody are inadmissible.

The determination of the admissibility of the statements must be determined from the decision of two questions. The first question is whether or not the evidence adduced at the in camera hearing is in support of the trial court's determination the statements were not a product of coercion. Secondly, we must resolve the question of whether the defendant intelligently waived his privilege against self-incrimination.

In resolving the question of coercion, we summarily hold that the evidence above stated does not support the conclusion that the defendant's statements were coerced statements. The officers specifically testified that they did not inform the defendant that if he would make a statement they would provide medical treatment for his withdrawal symptoms. Further, we note that this was not controverted by the defendant at the hearing and apparently no promises or incentives were given to the defendant to make a statement. Consequently, the question of the coercive nature of interrogation is resolved against the defendant as the record does not support an argument of this nature.

 We next address ourselves to the question of whether the defendant knowingly and intelligently waived his privilege against self-incrimination. We have held that even though the accused may be to some extent under the influence of narcotics this fact alone does not conclusively establish the confession as involuntary. Consequently, he may make incriminating statements to interrogating officers while being under the influence of a narcotic. See, Fred v. State, Okl.Cr., 531 P.2d 1038 (1975) and People v. Garcia, 227 Cal.App. 2d 345, 38 Cal.Rptr. 670 (1964). We find in light of the above authority that there is sufficient evidence within the record to show that the confessions made during interrogation were made freely and voluntarily. This determination is within the province of the trier of facts and we will not disturb the trial court's factual conclusions on appeal. We therefore find this pro se proposition to be without merit.

Defendant next urges pro se the lineup was improperly conducted. We find this contention without merit in light of our decision in Mahan v. State, Okl.Cr., 508 P.2d 703 (1973).

Defendant finally urges the trial court improperly admitted State's Exhibits Nos. 1 through 9, and that the trial court improperly denied his request for a continuance. We find these propositions of error wholly without merit and, thus, need no discussion in this opinion.

The judgment and sentence is affirmed.

BRETT, P. J., and BUSSEY, J., concur.