Lawrence **WALTON**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–78–437.

Court of Criminal Appeals of Oklahoma.

April 26, 1979.

Pete Silva, Jr., Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Duane N. Rasmussen, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Lawrence Walton, hereinafter referred to as the defendant, was charged,

tried and convicted in the District Court, Tulsa County, Case No. CRF–77–2537, for the offense of Attempted Robbery by Fear, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 791. His punishment was fixed at ten (10) years' imprisonment. From said judgment and sentence an appeal has been perfected to this Court.

The record reveals that during the early morning hours of September 18, 1977, Merlin Broas was picking up trash in the movie theater of which he was the manager in Tulsa, Oklahoma. He heard a noise coming from the men's restroom and upon checking the door, he found it to be locked. Broas returned to the box office area and waited in the doorway. Someone wearing blue clothing with a sack over his head and a sack over his extended arm came down the hallway. The person mumbled something which was not understandable. Broas stepped into the box office, locked the door and called the police. While he was on the telephone, he heard a buzzer, indicating that the back exit door had been opened. That door which could not be opened from the outside once it was closed, led to a small steel-enclosed space with no other exit. The police arrived within minutes of the call and found the defendant in the small space behind the theater. A blue shirt, a blue pair of pants and pieces of torn grocery sacks were found in the nearby area.

The defendant was placed under arrest and transported to the police station. He was advised of his *Miranda* rights and executed a written waiver thereof. Defendant stated that he had gone to the theater and watched the movie. After everyone left, he went into the bathroom, changed his clothes, put a sack over his head and over his hand and walked toward the ticket booth. He pointed his hand with the sack over it, at the manager, like "I had a gun." [Tr. 45]. The manager went inside the booth and shut the door. Defendant went out the back exit and found himself trapped in the area behind the theater.

Defendant testified that prior to the evening in question he became angry at the manager because of an incident that happened at the theater. He decided that he would scare him the next time, to get even with him. He took an extra set of clothes and the two paper bags with him to the theater. He went into the bathroom, changed clothes and put on the sacks. He left the bathroom and proceeded down the hallway toward the ticket booth. The manager said the movie is over and slammed the door. The defendant attempted to leave through the back door and discovered that he could not get out. He changed clothes and tore up the bags because he knew that he would be ultimately arrested. He denied having any intention of robbing Broas, saying he only wanted to frighten him. He admitted a prior conviction for shooting with intent to kill.

▮ Defendant asserts in the first assignment of error that the trial court erred in failing to sustain the motion to suppress his statement given to Officer Brown. Defendant does not contest that he signed either the waiver or the statement. Defendant argues that he was unable to make a knowledgeable and intelligible waiver of his right because he was under the influence of prescription drugs. This question was presented to the trial court during the course of the trial, who properly conducted an in camera hearing as to the same. At the hearing, Officer Brown testified that sometime after the waiver had been executed, defendant informed him that he had taken some Valiums. He further testified that defendant's bearing and demeanor was no different than any other occasion, when he had the opportunity to observe him. Defendant appeared lucid and had no problem in understanding any of the questions. He did not exhibit any manifestations to indicate that he was under the influence of any type of medication or alcoholic beverage.

We are of the opinion that there was sufficient evidence from which the trial court could conclude that defendant's statement was made freely and voluntarily irrespective of whether he may have been partially under the influence of a prescription drug. We have repeatedly held that the determination of voluntariness is within the

province of the trier of facts and absent a clear abuse of discretion, this Court will not disturb the trial court's findings of fact. See *McCoy v. State*, Okl.Cr., 534 P.2d 1317 (1975), *Henson v. State*, Okl.Cr., 522 P.2d 299 (1974) and *Cooper v. State*, Okl.Cr., 560 P.2d 1018 (1977). We therefore find this assignment of error to be without merit.

■ Defendant contends in the final assignment of error that the verdict is not supported by the evidence. He urges that because the State failed to prove any threat or demand for property, that it failed to negate his testimony, that he merely intended to scare Mr. Broas.

The Attorney General counters this assertion by arguing that the evidence was sufficient to show that the defendant made all the overt acts necessary for the completion of the crime which was not consummated because of the actions of the manager in locking himself inside the ticket booth.

We agree with the Attorney General that there was sufficient evidence to support the jury's verdict. Defendant's actions in waiting until everyone had left the theater, and appearing with a sack over his head and pointing his hand which was likewise covered by a sack at the manager, and uttering some unintelligible words—when coupled with his statement to the police admitting the attempted robbery—was sufficient to establish a prima facie case. The jury by its verdict apparently did not believe defendant's testimony that he only intended to frighten the manager. This Court has consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that an accused was guilty as charged, it will not interfere with that determination upon the grounds that the evidence is insufficient even though conflicting in that it is the exclusive province of the jury to weigh the evidence and determine the facts. See *Bellows v. State*, Okl.Cr., 545 P.2d 1303 (1976) and *Caudill v. State*, Okl.Cr., 532 P.2d 63 (1975). In conclusion we observe the record is free of any error which would cause reversal or justify modification. Under such circumstances we are of the opinion

that the judgment and sentence should be and the same is accordingly *AFFIRMED*.

CORNISH, P. J., and BRETT, J., concur