Jack HARDIN, a/k/a Buck Hardin, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–539.

Court of Criminal Appeals of Oklahoma.

Aug. 10, 1982.

Irvin Owen, Shawnee, for appellant.

Jan Eric Cartwright, Atty. Gen., Robert C. Smith, Jr., Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Jack Hardin, appellant, was charged in the District Court of Pottawatomie County with the crime of Murder in the First Degree, After Former Conviction of a Felony. At trial the case was only submitted to the jury on the lesser included offense of First Degree Manslaughter, After Former Conviction of a Felony, and the jury returned a verdict of guilty. Under the habitual criminal statute he was sentenced to forty (40) years' imprisonment.

On September 10, 1980, appellant was invited to the home of Freeland Woods. Appellant, Mr. Woods and another guest had several rounds of drinks that afternoon. The party was interrupted when a fight ensued between Hardin and Mr. Woods.

Douglas Lena came home from work that afternoon and found Mr. Woods sitting in a chair bleeding, but still conscious. Mr. Lena ignored Mr. Woods' request not to seek medical attention, and an ambulance was called. Mr. Woods died at the hospital approximately nine hours later. An autopsy revealed that he died as a result of massive internal hemorrhaging caused by a blunt blow to the abdomen. Lacerations and abrasions were also found on Mr. Woods' head, but the coroner testified that these wounds did not cause death.

Ronald Wedgeworth, a Shawnee police officer, testified that Mr. Woods told him he had fought Hardin that afternoon. The appellant was then arrested and placed in the drunk tank. At Mr. Woods' residence the police discovered two broken crutches. Hardin later identified one of the crutches as the instrument he used to strike Mr. Woods.

Early September 11, 1980, appellant was removed from the jail for questioning. The officers advised Hardin of his *Miranda* rights, he waived his rights and a cassette recording was made of his interview with the police. Within an hour, at approximately 4:00 a. m. that same morning, Hardin submitted to a second interview. At this interview a videotape recording was made of his statement. Both recordings were played before the jury. In each recording Hardin admitted to striking Mr. Woods with a crutch.

Other evidence was presented by the State, including blood and hair samples of the victim which were found on the appellant's boots and clothing. Aside from the appellant's testimony, the only evidence offered in defense was the testimony of Gayla Wapp, a counselor for the Pottawatomie Tribe, concerning Hardin's character as a responsible worker.

## I

The appellant contends that statements made by him in response to police questioning were involuntarily given and were not obtained as the result of an intelligent waiver of his Fifth Amendment rights. He asserts that he was suffering from a hangover and was not advised that he would be charged with Wood's homicide. He further argues that the failure of the police to inform him that the interview was being videotaped rendered his statement inadmissible.

 It must first be noted that appellant was advised of his *Miranda* rights prior to each interview. The record also reflects that he waived his right to remain silent and did not request the questioning to halt at any point during either interrogation. The issue of voluntariness is not to be decided by making a selective examination of the facts. The question must be decided by viewing the totality of the circumstances. See *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In addition, when the appellant challenges the admissibility of a statement or confession, the burden is on the State to show that it was voluntary. *Henson v. State*, 522 P.2d 299 (Okl.Cr.1974). An examination of the record convinces this Court that the State has met this burden.

This Court has held that even though the accused may be to some extent under the influence of narcotics or alcohol, this fact alone does not conclusively establish the confession as involuntary. See *McCoy v. State*, 534 P.2d 1317 (Okl.Cr.1975); See also *Walton v. State*, 594 P.2d 794 (Okl.Cr.1979).

Hardin's assertion concerning his level of intoxication at the time of interrogation is not supported by the record. He was arrested at approximately 4:00 p. m. on September 10, 1980. However, he was not questioned until after 2:00 a. m. the following morning, almost eleven hours since his last opportunity to drink. Officer Collins, the officer who conducted the initial interrogation, testified that appellant was sober. The appellant's direct testimony was the only evidence offered to contradict his sobriety.[1]

1. On cross-examination the following exchange took place between appellant and prosecutor:

"Q: Did you understand their questions? A: Yeah, I understood them.

Prior to the first interrogation, Hardin was informed that the nature of the questioning would be in reference to the fight he had with Mr. Woods. His argument that he should have been informed of the exact charges against him is meritless. The decision concerning what charges will be filed against an accused lies in the discretion of the prosecutor, not the interrogating officers. *Babek v. State*, 587 P.2d 1375 (Okl.Cr.1978); *Jenkins v. State*, 508 P.2d 660 (Okl.Cr.1973). The police are not required to advise an accused of the specific charges to be filed against him, nor are they required to inform him of all material facts known to them. It is sufficient that the accused is advised of the nature of the questioning and of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant also contends the video recording was taken without his knowledge and consent, therefore, his statement should have been suppressed. He cites no authority to support this conclusion. Hardin's first interrogation was recorded on a cassette tape. The record indicates that Hardin was aware of the presence of the tape recorder. After being advised again of his rights, appellant submitted to a second interview, this time under the watchful eye of a videotape machine. It is evident from the record that no attempt was made to conceal the videotaping device from appellant, and the statement obtained from him was substantially the same during each interview.

In this case an in camera hearing was conducted and the trial court determined appellant's statements were voluntarily given after he knowingly and intelligently

waived his Fifth Amendment rights. The trial court had the opportunity to view the most competent evidence available on the issue of voluntariness, the tapes themselves, and concluded the appellant made the statements knowingly and voluntarily. Unlike a voice recording, videotape exactly reproduces the appellant's demeanor and condition at the time of the statement. If he is hesitant, uncertain, or faltering such facts will appear, and if he has been fatigued by interrogation, physically abused, or in any other respect is acting involuntarily, the tape will show the same. Therefore, the ruling of the trial court will not be disturbed by this Court. *Dennis v. State*, 561 P.2d 88 (Okl.Cr.1977).

Law enforcement personnel generally should advise an accused of the use of mechanical recording devices. However, absent a showing by the appellant that the use of the video recording rendered his statements unknowing and involuntary, this Court cannot hold that the State's failure to advise him of its presence constitutes reversible error.[2] See *United States v. James*, 496 F.Supp. 284 (W.D.Okl.1977) and *Jackson v. State*, 637 P.2d 887 (Okl.Cr.1981).

We find the initial assignment or error to be without merit.

## II

Appellant next argues that it was error to allow the State to cross-examine him concerning his prior convictions and arrests for the purposes of impeachment. In a previous proceeding, appellant entered a plea of guilty to the felony of Assault and Battery with a Dangerous Weapon and re-

---

Q: And you gave answers to those questions, didn't you?
A: I gave answers to them, yes.
Q: And you just heard your answers played back to you, didn't you on that tape?
A: Well, I—I hear it, but I wasn't—I didn't have time to think it. My head was kind of messed up.

**2.** Prior to *Miranda*, supra, this Court was confronted with a similar question involving the filming of coordination tests administered to individuals arrested for driving under the influence of intoxicating liquors. In *Spencer v.*

*State*, 404 P.2d 46 (Okl.Cr.1965), we held that an accused must be informed that films were being taken of his actions. This rule has been followed in subsequent decisions by this Court. See *Ritchie v. State*, 415 P.2d 176 (Okl.Cr. 1966); *Stewart v. State*, 435 P.2d 191 (Okl.Cr. 1967). Although *Spencer v. State*, supra, has not been reversed, it has been overruled in part and questioned by this Court on several occasions. See *State v. Thomason*, 538 P.2d 1080 (Okl.Cr.1975). To the extent that *Spencer v. State*, supra, conflicts with this decision, it is overruled.

ceived a two (2) year deferred sentence. However, on April 5, 1978, this deferred sentence was accelerated, and appellant was sentenced to serve one (1) year in county jail. In addition, appellant had been arrested numerous times for public drunkenness. On cross-examination all these facts were disclosed to the jury.

■ The appellant maintains his former sentence of one year in county jail places that conviction in the category of a misdemeanor, not a felony, and consequently this prior conviction cannot be used for impeachment purposes. The Oklahoma Evidence Code, 12 O.S.1981, § 2609(A)(2), allows impeachment by former conviction if the crime was punishable by death or imprisonment in excess of one (1) year. It is clear that the legislature was referring to all felonies. See 21 O.S.1981, § 5. The Oklahoma Supreme Court held in *Braly v. Wingard*, 326 P.2d 775 (Okla.1958), that it is not the actual punishment imposed but the extent to which punishment may be imposed which controls the point whether the crime is a felony. The record expressly documents the entry of a guilty plea to a felony, Assault and Battery With a Dangerous Weapon. Under the statute, the appellant was subject to a possible sentence of five (5) years in the state penitentiary. 21 O.S.1981, § 645. Therefore, the prior conviction clearly lies within the parameters outlined in 12 O.S.1981, § 2609(A)(2), and the trial court was not in error.

■ Similarly, cross-examination by the State concerning the number of times appellant had been arrested for public drunkenness was in response to the appellant's direct examination on this topic. During direct examination of appellant by defense counsel the following occurred:

"Q: Well, Buck you've been around a long time. You've been arrested for public drunkedness several times by your own admissions. Have you ever been in prison?

A: No."

As a general rule, any matter is a proper subject of cross-examination which is responsive to testimony given on direct examination, or which is material or relevant thereto, and which tends to elucidate, modify, explain, contradict or rebut testimony given in chief by the witness. *Rapp v. State*, 418 P.2d 357 (Okl.Cr.1966). As a consequence, appellant opened the door to further inquiry about his arrests for public drunkenness.

III

The trial court conducted a bifurcated proceeding to determine whether Hardin was guilty of First Degree Manslaughter, After Former Conviction of a Felony. According to appellant, the former felony charge of Assault and Battery with a Dangerous Weapon was reduced as a result of plea bargaining to the misdemeanor of assault, thus prohibiting the enhancement of punishment on the grounds of that conviction. Appellant's claim is not supported by the record. There is no indication that a plea bargain arrangement resulted in a reduction of charges. The record contains State's Exhibit No. 11, the judgment and sentence, which expressly states appellant was convicted of a felony but sentenced to only twelve months in the county jail. This Court held, in *Conner v. State*, 518 P.2d 1271 (Okl.Cr.1974), that a certified judgment and sentence containing the same name as that of appellant, when introduced, establishes a prima facie case, and the burden shifts to appellant to rebut that evidence in order to preclude application of the Habitual Criminal Act. No such rebuttal evidence was presented by appellant.

■ Hardin asserts that the mere presentation of the judgment and sentence documenting his prior conviction, without providing an authenticating witness, denied him of his right to confront witnesses against him and to cross-examine the witnesses. Once again, appellant fails to support his argument with any reference to evidence or citation of authority. An authenticating witness clearly is not required. This Court has held the State may prove appellant's prior conviction by merely introducing a certified copy of the judgment and

sentence. See *Suitor v. State*, 629 P.2d 1266 (Okl.Cr.1981); and *Louder v. State*, 568 P.2d 344 (Okl.Cr.1977).

### IV

After a ruling at the preliminary hearing binding him over for trial on the charge of Murder in the First Degree, appellant requested a continuance for the purpose of lodging an interlocutory appeal to this Court of that order. His request was denied, and appellant contends he was deprived of due process of law and a fair trial. Appellant theorizes his trial on First Degree Murder was a travesty of justice, and merely a prosecutorial scheme designed to select a jury predisposed in favor of conviction.

■■■■ A motion for a continuance is addressed to the sound discretion of the trial judge, whose ruling will not be disturbed absent a clear showing of abuse of discretion. *Day v. State*, 620 P.2d 1318 (Okl.Cr.1980). A ruling binding appellant over for trial is not a final order of judgment. It is an intermediate order made in the progress of the case and cannot be appealed from, except by review after pronouncement of judgment and sentence. *Jones v. Dillard*, 545 P.2d 209 (Okl.Cr.1976); 22 O.S.1981, § 1051. Therefore, we find no abuse of discretion in denying appellant's motion for a continuance.

The judgment and sentence is hereby AFFIRMED.

BUSSEY, J., concurs.

BRETT, P. J., specially concurs.

BRETT, Presiding Judge, specially concurs:

While I concur that this conviction should be affirmed, I see no necessity for overruling *Spencer v. State*, supra. Further, if it is still required that the investigator should advise the person under investigation that a tape-recording is being made of his statement, it should be even more important to advise the person that his statement is being videotaped. Instead of providing as the majority opinion does that, "Law enforcement personnel generally should advise an accused of the use of mechanical recording devices," I would continue in effect the rule that law enforcement personnel *must advise* the accused that mechanical recording devices are being used to take a statement. In this respect, this opinion seems to water-down a procedure that has become established practice.