2004 OK CR 14

**The STATE of Oklahoma, ex rel. C. Wesley LANE II, District Attorney, Appellant**

v.

**Jerry D. BASS, District Judge of the Seventh Judicial District Oklahoma County, Oklahoma, Appellee.**

**No. PR–2003–946.**

Court of Criminal Appeals of Oklahoma.

March 9, 2004.

*ORDER GRANTING WRIT OF PROHI-BITION AND REMANDING TO THE DISTRICT COURT OF OKLA-HOMA COUNTY WITH INSTRUC-TIONS; ORDER ESTABLISHING PROCEDURE FOR PRETRIAL DE-TERMINATION OF MENTAL RE-TARDATION AND ESTABLISHING PROCEDURE FOR APPEAL*

¶1 On August 25, 2003, Petitioner, the State of Oklahoma, by and through C. Wesley Lane II, District Attorney, Aaron Balch and Fern Smith, Assistant District Attorneys, filed a Petition for Writ of Prohibition, or in the alternative, Petition for Writ of Mandamus, requesting this Court prohibit the District Court of Oklahoma County from conducting a separate jury trial on the issue of mental retardation in Case No. CF–99–6416, *The State of Oklahoma v. Richard Virgo Blonner.*

¶2 Blonner is charged with First Degree Murder (and other additional charges). The State of Oklahoma filed a Bill of Particulars alleging the existence of aggravating circumstances warranting imposition of the death penalty. The State alleges in its application that Respondent, the District Court of Oklahoma County, the Honorable Jerry D. Bass, District Judge, exercised judicial authority unauthorized by law by granting Defendant Richard Blonner's request for a separate jury trial on the issue of mental retardation prior to conducting Blonner's trial for the charged offense. The mental retardation jury trial was scheduled to begin Monday, September 29, 2003. Alternatively, the State alleges that Judge Bass erred when he refused to conduct a separate evidentiary hearing on the issue of mental retardation. Specifically, the State argues that the defendant is required to make a *prima facie* showing of his mental retardation at an evidentiary hearing held for that purpose before allowing submission of the issue to a jury. The State cites our recent decisions in *Murphy v. State,* 2003 OK CR 6, 66 P.3d 456 [hereafter *Murphy II*], *Lambert v. State,* 2003 OK CR 11, 71

P.3d 30, and *Pickens v. State,* 2003 OK CR 16, 74 P.3d 601.

¶ 3 On September 10, 2003, we directed Respondent to file a response to the State's application. That response was filed on September 22, 2003, by designated representatives of the Oklahoma Indigent Defense System (OIDS), by and through counsel Mary Bruehl, Debbie Maddox and Janet Chesley.

¶ 4 In its response, OIDS alleges there is no legal authority directing the District Court to order an evidentiary hearing requiring an accused to present *prima facie* evidence sufficient to raise a question of fact on the issue of mental retardation before being able to bring his mental retardation claim before a jury. OIDS claims that the *prima facie* standard argued by the State, and the procedures set forth in this Court's decisions in *Murphy II, Lambert,* and *Pickens* apply only in post-conviction death cases. OIDS submits that an accused bears the burden of proving he is death ineligible by a preponderance of the evidence, and that the trial court properly ordered a separate jury trial on the issue of mental retardation prior to any trial upon the merits.

¶ 5 For a writ of prohibition, Petitioner must establish (1) a court, officer or person has or is about to exercise judicial or quasi-judicial power; (2) the exercise of said power is unauthorized by law; and (3) the exercise of said power will result in injury for which there is no other adequate remedy. Rule 10.6(A), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2003). For a writ of mandamus a petitioner has the burden of establishing (1) he has a clear legal right to the relief sought; (2) the respondent's refusal to perform a plain legal duty not involving the exercise of discretion; and (3) the adequacy of mandamus and the inadequacy of other relief. *See Woolen v. Coffman,* 1984 OK CR 53, ¶ 6, 676 P.2d 1375, 1377; Rule 10.6(B), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2003).

¶ 6 Both parties have confused the issues addressed by the trial court in its ruling authorizing a separate jury trial on the issue of mental retardation, and have also misconstrued this Court's various post-conviction decisions addressing the mental retardation issue. We understand the confusion created by this Court's creation of procedures dealing with mental retardation in post-conviction proceedings and in trial proceedings and take this opportunity to further clarify our prior opinions and procedures in pending and future capital trials. We appreciate Judge Bass's efforts to give meaning to all the language in *Murphy II* and his efforts to protect the rights of the defendant. Still, we find that the State is entitled to the relief requested, as neither *Murphy II, Lambert,* nor *Pickens* require or authorize the District Court to empanel a separate jury trial on the issue of mental retardation before a defendant has been brought to trial on the capital offense.

¶ 7 In *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), the United States Supreme Court held that imposition of the death penalty upon those who are mentally retarded violates the Eighth Amendment to the United States Constitution. The Court left it to individual States to define mental retardation and to develop appropriate procedures to enforce this constitutional restriction. *Atkins,* 536 U.S. at 317, 122 S.Ct. at 2250. Following *Atkins,* in a capital post-conviction proceeding, *Murphy v. State,* 2002 OK CR 32, 54 P.3d 556 [hereinafter *Murphy I*], this Court anticipated the difficulties and confusion which would arise in future capital cases wherein the defendant claimed he or she was death penalty ineligible because of mental retardation. Recognizing that there was no current Oklahoma legislative enactment addressing this issue, this Court adopted a definition of mental retardation for use in capital trials which applies to individuals alleging that they are not death penalty eligible. *Murphy,* 2002 OK CR 32, ¶ 31, 54 P.3d at 566–567.

¶ 8 We stated in *Murphy I* that this definitional standard was to be used in all future and pending capital trials where the issue of mental retardation is raised at the trial court level pending enactment of suitable legislation replacing this procedure. *Id.* At trial, it is the defendant's burden to prove he or she is mentally retarded by a

preponderance of the evidence. "Unless the issue of mental retardation is resolved prior to trial, the issue of mental retardation shall be decided in the sentencing stage of a capital murder trial, pursuant to the instruction set forth in Appendix A." *Murphy,* 2002 OK CR 32, ¶ 32, 54 P.3d at 567. If a jury determines a defendant is not mentally retarded, the defendant's intellectual functioning may still be considered as a mitigating factor in the sentencing stage. If the jury finds the defendant has shown by a preponderance of the evidence that he or she is mentally retarded, the defendant is not eligible for the death penalty. *Murphy,* 2002 OK CR 32, ¶ 33, 54 P.3d at 567.

¶ 9 In resolving the request for a separate jury trial on the issue of mental retardation, Judge Bass correctly recited the procedures and guidelines from *Murphy I.* He then stated:

"In the *Murphy I* case the jury hears all of the evidence. They hear all of the evidence about the facts of the murder and then they hear the aggravators and the mitigators and the evidence on mental retardation. They hear the whole ball of wax.

But in this *Lambert* case—and I am fully aware that it is post-conviction. I understand that. But in this *Lambert* case the Oklahoma Court of Criminal Appeals has decided that in the *Lambert* case that Lambert is not to be remanded for a sentencing stage, but is to be remanded on the sole issue of mental retardation. They are not—the jury is not to be death qualified because they are only hearing the issue of mental retardation. . . .

So in *Murphy I* the jury gets to hear everything; in *Lambert* the jury doesn't hear everything.

And this leaves me in a quandary because if I proceed with Blonner and they hear everything and the Oklahoma Court of Criminal Appeals says, no, we should have had a hearing on the sole issue of mental retardation and then proceed to trial and then the mental retardation issue has been resolved.

Whereas, if I follow *Lambert* and we have like a competency trial that is similar on

this determination of mental retardation, then we never get to that and we don't have a capital trial. And if I don't—if I don't follow *Lambert* and the case is appealed then there is no telling how many trials that this court, as well as other courts in this courthouse and other courthouses around the State, and we could try several and then have to turn around and have to re-try those on the issue of mental retardation. . . .

Because of the magnitude of the Court's [*Lambert*] decision, I'm going to order a jury trial on the issue of mental retardation only and order that the jury is not to hear the facts of the case except narrowly under the *Lambert* decision, if there is some narrow exceptions on the issue of mental retardation. And then if that jury makes a finding that he is mentally retarded then the State cannot proceed on the capital murder."

■ ¶ 10 We understand the District Court's concern for following this Court's directives and erring on the side of caution to avoid the need to potentially retry a capital case. However, as properly noted by Judge Bass, *Lambert* is a post-conviction ruling. It did not overrule, abrogate or modify the procedures established in *Murphy I* as they relate to pending and future capital cases where the defendant claims he or she is mentally retarded. "Unless the issue of mental retardation is resolved prior to trial," *Murphy,* 2002 OK CR 32, ¶ 32, 54 P.3d at 567, the proper procedure to be used was that recited by Judge Bass from the decision in *Murphy I* and the mental retardation issue is to be addressed only after a finding of guilt in a capital trial.

¶ 11 Unfortunately in *Murphy I,* this Court did not elaborate on how the issue of mental retardation could be resolved prior to trial and only discussed the procedure to be followed when the issue was not resolved prior to trial. Here, we take the opportunity to further clarify how the issue of mental retardation can be resolved prior to trial, as contemplated by the language in *Murphy I.*

■ ¶ 12 In all pending and future cases, a defendant shall be required to file his or her

Notice of Intent to raise Mental Retardation as a defense to the imposition of the death penalty within sixty (60) days from the date the State of Oklahoma files its Bill of Particulars or from the date of arraignment, whichever is later. To that extent, *Murphy*, 2002 OK CR 32, ¶ 32, 54 P.3d at 567, is hereby **modified.**[1]

■ ¶ 13 After the State files its Bill of Particulars and after the defendant files Notice of Intent to raise Mental Retardation as a defense to the imposition of the death penalty, the defendant may file a Motion to Quash Bill of Particulars due to Mental Retardation and request an evidentiary hearing if the defendant wants to resolve the issue of mental retardation prior to trial. *By filing such a Motion, the defendant waives his right to jury determination on the issue of mental retardation.*[2]

¶ 14 The trial court shall set the matter for evidentiary hearing within sixty (60) days. At the evidentiary hearing, the defendant shall personally and affirmatively waive his or her right to jury determination of the issue of mental retardation on the record. The hearing shall be conducted after complete discovery is afforded both parties under the Oklahoma Criminal Discovery Code.[3] Because the defendant has the burden of proof, he or she shall open the case first, present evidence first, and have the opportunity to present the first and last closing arguments to the trial court. Each party may have the defendant examined by an expert, and may present that expert testimony in support of the claim that the defendant is or is not mentally retarded by a preponderance of the evidence. At the conclusion of the hearing, the trial court shall determine whether the Defendant has shown by a preponderance of the evidence that he or she is mentally retarded. If the trial court finds the defendant has not met his burden of proving mental retardation, the defendant's intellectual functioning may still be considered as a mitigating factor in the sentencing stage of the capital trial. The decision of the trial court shall be made in open court and memorialized thereafter by an order setting forth Findings of Fact and Conclusions of Law.

¶ 15 Either party may file an appeal from the trial court's order granting or denying a Motion to Quash Bill of Particulars on grounds of mental retardation.[4] This Court will apply the preponderance of the evidence standard on appeal and conduct a *de novo* review of the trial court's factual findings.

¶ 16 The party seeking to appeal shall file a notice of intent to appeal and designation of record with the trial court clerk within five (5) days from the date the judge's ruling is pronounced in open court. The filing of the notice of intent to appeal in the district court is jurisdictional and failure to timely file constitutes waiver of the right to appeal. The party seeking to appeal shall file the notice of intent to appeal, together with a copy of the trial court's written order being appealed, with the Clerk of this Court within ten (10) days from the date the notice is filed in the district court. *See* Rule 2.5 and 13.4, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2003)

1. For those pending district court capital cases, where sixty (60) days from arraignment or from the date the State filed its Bill of Particulars has already passed, the defendant shall file his Notice of Intent to raise Mental Retardation as a defense to the imposition of the death penalty within sixty (60) days from the date of this Order.

2. In *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 2439–40, 153 L.Ed.2d 556 (2002), the United States Supreme Court held that a capital jury must make any factual findings bearing on capital punishment beyond a reasonable doubt. Without addressing whether *Ring* applies to the determination of mental retardation, we believe that a defendant's affirmative waiver of a jury determination on that issue is required.

3. 22 O.S.2001, § 2001 *et. seq.*

4. We recognize that currently there is a statutory method for the State to appeal from a motion to quash. *See* 22 O.S.2001, § 1053(1). However, by this Order and until further amendment to this Court's rules, we hereby establish the procedure for both parties to follow when seeking an interlocutory appeal from a trial court's order granting or denying a Motion to Quash Bill of Particulars on grounds of Mental Retardation. Because a trial court's finding that a defendant is not mentally retarded allows the capital proceedings to go forward, interlocutory review of this determination before the time and expense of the capital murder trial is warranted.

¶ 17 To perfect the appeal, the Petition in Error, certified copy of the original record, transcript of proceedings and brief shall be filed with the Clerk of this Court within sixty (60) days from the date the trial court enters an order granting or denying the Motion to Quash Bill of Particulars.

¶ 18 The court reporter shall be required to expedite preparation of the record. Requests for extensions of time shall be considered in accordance with Rule 3.2(C), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2003) To ensure the appeal is perfected within sixty (60) days, the record and transcripts shall be completed and filed with the district court clerk, and immediately transmitted to the Clerk of the Court of Criminal Appeals and appellate counsel within forty (40) days of the entry of the trial court's order. If the record is not complete within forty (40) days of the trial court's order, a Notice of Non–Completion of Record shall be sent to the Clerk of the Court of Criminal Appeals, explaining the cause for delay. A show cause hearing in this Court may be scheduled.

¶ 19 The district court clerk shall prepare and file three (3) certified copies of all pleadings, instruments, and transcripts designated for inclusion in the appeal record within forty (40) days from the date of the order appealed from in the same manner provided for the preparation of a regular appeal and as set forth in Rules 2.2, 2.3 and 2.4, however the due dates set forth herein shall control. The original transcript and one (1) certified copy of the record designated shall be filed with the Clerk of this Court; one (1) certified copy of the record and transcript shall be provided to the district attorney; and, one (1) certified copy of the record and transcript to either the Oklahoma Indigent Defense System, pursuant to Section 1362 of Title 22, or to the retained or other appointed counsel of record on appeal.

¶ 20 The Petition in Error shall be filed within sixty (60) days from the date the judge's ruling is pronounced in open court to invoke the jurisdiction of this Court. The Petition in Error must contain the following information:

(1) The type of appeal and the date the State filed its Bill of Particulars;

(2) The date the defendant gave Notice of Intent to raise Mental Retardation as a defense to the imposition of the death penalty;

(3) The date the Motion to Quash Bill of Particulars due to Mental Retardation was filed in the district court;

(4) The case number and the court from which the appeal is lodged;

(5) The date on which the court order was entered and the name of the judge; and,

(6) The nature of relief being sought.

¶ 21 The Brief of Appellant shall be filed with the Petition in Error and shall be served on the adverse party within five (5) days from the date on which the Brief is filed and must contain a certificate of service. *See* Rules 1.9(B) and 3.4(A), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2003).

¶ 22 The Answer Brief shall be filed within twenty (20) days from the date the Appellant's brief is filed.

¶ 23 The content of the briefs of the parties shall be in compliance with Rule 3.5, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2003), except that the briefs shall not exceed twenty (20) typewritten pages in length.

¶ 24 Because an appeal from a trial court's decision on a Motion to Quash Bill of Particulars on grounds of Mental Retardation is an interlocutory appeal and time is of the essence, this Court will expedite its handling of these cases.

■ ¶ 25 We are mindful of the concern that the issue of mental retardation might be overshadowed by the facts of a particular capital case and/or in spite of a showing of mental retardation when the issue is decided by a jury at trial. Accordingly, the above procedure provides the defendant with an alternative method to having the issue decided prior to trial. If the trial court denies the Motion to Quash Bill of Particulars on grounds of Mental Retardation, and if that decision is appealed and is affirmed on ap-

peal, the defendant's intellectual functioning may still be considered as a mitigating factor in the sentencing stage of the capital murder trial.

¶ 26 If the defendant opts for jury determination of the mental retardation issue and does not seek resolution of the issue prior to trial, the procedures outlined in *Murphy I* for a post-judgment *Atkins* hearing are intended to provide another level of review. In cases where the issue of mental retardation is properly raised and the jury finds the defendant is not mentally retarded and imposes the death penalty, the trial court shall, upon the defendant's request, hold a post-judgment *Atkins* hearing for the purpose of determining if the jury's decision on the issue of mental retardation resulted in an excessive sentence (a sentence imposing the death penalty on a defendant who meets the *Murphy I* definition of mentally retarded). *Murphy*, 2002 OK CR 32, ¶ 34, 54 P.3d at 567. The trial judge's duty at a post-judgment *Atkins* hearing is to determine whether or not the factual determinations relating to the issue of mental retardation were imposed by the jury under the influence of passion, prejudice or any other arbitrary factor. The trial judge shall conduct a *de novo* review of the evidence presented at trial and determine whether or not the defendant is mentally retarded, as defined in *Murphy I,* using a preponderance of the evidence standard. *Murphy*, 2002 OK CR 32, ¶ 35, 54 P.3d at 568.

¶ 27 We must also address the State's contention that "it is incumbent upon a defendant to present sufficient evidence, at an evidentiary hearing before the trial court, that he is mentally retarded so as to raise a question of fact to be resolved by a jury." The post-conviction cases relied upon by the State for that contention, *Lambert* and *Pickens,* do not require a defendant to present *prima facie* evidence of mental retardation before being entitled to raise the matter at trial; *Lambert* and *Pickens* are instructive for post-conviction matters. No pretrial evidentiary procedure was established by *Murphy I. Prima facie* evidence of mental retardation does not need to be shown prior to trial. However, as with other claims and defenses raised at trial, the defendant must present *prima facie* evidence at the jury trial on the issue of mental retardation sufficient to warrant the instruction on mental retardation.

¶ 28 The State's Application for Writ of Prohibition is **GRANTED.** This matter is remanded to the District Court of Oklahoma County with instructions to vacate its order granting Defendant Blonner's request for a separate jury trial on the issue of mental retardation. The District Court is directed to proceed with Blonner's trial in accordance with the procedures outlined in this Order.

¶ 29 **IT IS SO ORDERED.**

¶ 30 **WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this 9th day of March, 2004.

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Presiding Judge.

/s/ Steve Lile
STEVE LILE, Vice Presiding Judge.

/s/ Charles S. Chapel
CHARLES S. CHAPEL, Judge.

/s/ Reta M. Strubhar
RETA M. STRUBHAR, Judge.

GARY L. LUMPKIN, J., Concur in part/Dissent in part.

LUMPKIN, J.: Concur in Part/Dissent in Part.

¶ 1 I concur in the Court's decision to grant the Writ of Prohibition in this case. However, I must dissent to the Court creating a procedure that not only further delays a trial on the merits in a capital murder case, but is totally unnecessary.

¶ 2 While I recognize the Court is vested with the authority to create procedures of this type, I believe the first question to ask is whether the procedure is necessary. This Court has already developed a procedure through its decisions in *Murphy v. State,* 2002 OK CR 32, 54 P.3d 556; *Lambert v. State,* 2003 OK CR 11, 71 P.3d 30; and *Pickens v. State,* 2003 OK CR 16, 74 P.3d 601. Simply put, in a capital murder trial the jury is instructed regarding the law relating to mental retardation and directed to

determine if the defendant is mentally retarded under those instructions in the penalty phase of the trial. If the jury finds the defendant mentally retarded, the instructions advise the death penalty cannot be applied. If the jury determines the defendant is not mentally retarded, they are instructed to consider the evidence relating to mental retardation as part of the mitigation evidence in the case. Upon assessment of the death penalty, in a case where mental retardation is raised as an issue, a post trial hearing, upon the request of the defendant, is required to have the trial judge determine "if the jury's decision on the issue of mental retardation has resulted in an excessive sentence, i.e., a sentence that imposed the death penalty upon a defendant who is mentally retarded, as herein defined." *Murphy*, 2002 OK CR 32, ¶ 34, 54 P.3d at 568–69. This Court would then review all allegations of error in the trial during the direct appeal and mandatory sentence review.

¶ 3 The procedure for raising the issue of mental retardation for the first time as a part of a post-conviction application is just as simple and efficient. Simply put, an appellant must first make a showing either in the original or subsequent application for post-conviction relief, pursuant to Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App (2003), that there is clear and convincing evidence of the issue of mental retardation to warrant a remand to the District Court for an evidentiary hearing. If remanded, the District Court will hold an evidentiary hearing to determine if there is sufficient evidence regarding whether the defendant is mentally retarded, as defined in *Atkins* and *Murphy*, to require a jury trial on the issue. If there is sufficient evidence and a jury trial on the issue of mental retardation is ordered, the sole issue for that jury is whether the defendant is mentally retarded. The procedure does not require a retrial on the issue of guilt.[1] It goes without saying, any and all evidence relating to the issue of mental retardation, whether it arose during the original trial on the merits or was subsequently developed, would be admissible.

¶ 4 Here, the record reveals the District Court was aware of the separate procedures for the original trial on the merits and a hearing on post-conviction remand, but the judge was hesitant to follow the procedure. As a result, it appears the judge combined the two separate procedures into one. A part of this misconception is attributable to the final language in the *Murphy* decision. This type of problem was anticipated in the original language drafted in *Murphy*, i.e. "unless the parties enter into a stipulation on this issue at trial or prior to trial ...". However, due to the group dynamics often present in the writing of appellate opinions, the language was changed to "unless the issue of mental retardation is resolved prior to trial, ...". *Murphy*, 2002 OK CR 32, ¶ 32, 54 P.3d at 568. Had the original language been left in place, the current confusion would likely not have occurred. I firmly believe defense attorneys and prosecutors would readily recognize those cases where mental retardation is clear and a stipulation should be entered. In those cases raising a question of fact, the issue should and would be determined by a jury, unless waived.

¶ 5 Instead of merely clarifying and applying the procedure already established, the Court elects to add time, hearings, and appeal to an already elongated process. In doing so, I believe the Court misuses the provisions of 22 O.S.2001, § 1053 to create an interlocutory appeal of an issue that will ultimately require review by this Court during the direct appeal of the case, should a verdict of guilt be entered. I cannot find support for that type of appeal created within the statute. The only sub-provision even remotely applicable is § 1053(5). However, that provision deals with suppressing or excluding evidence, not the determination of an issue on the merits, i.e. mental retardation. We have previously held the quashing of a Bill of Particulars is an error to be addressed in a regular appeal. See *Matthews v. State*, 2002 OK CR 16, 45 P.3d 907, 924. Why create an interlocutory appeal on an issue that will ultimately also have to be adjudicat-

---

1. *Lambert* and *Pickens* were post-conviction cases that discussed only the scope of trial on remand for the issue of mental retardation. Those cases did not discuss or affect the procedure to be utilized when a defendant is initially on trial in a capital case.

ed as a part of the direct appeal upon conviction? Further, our case law is replete with this Court firmly denying the use of an interlocutory appeal in the progress of a case. See, *Nguyen v. State*, 1989 OK CR 6, 772 P.2d 401, 403; *Hardin v. State*, 1982 OK CR 124, 649 P.2d 799, 804; *State v. Lemmon*, 1978 OK CR 10, 574 P.2d 1057, 1059; *Jones v. Dillard*, 1976 OK CR 9, 545 P.2d 209, 210.

¶ 6 Furthermore, the procedure created for this pre-trial hearing and interlocutory appeal itself creates potential problems. The Order says, "By filing such a Motion, the defendant waives his right to jury determination on the issue of mental retardation."[2] Order at ¶ 13. But then, the Order says, "At the evidentiary hearing, the defendant shall personally and affirmatively waive his or her right to jury determination of the issue of mental retardation on the record." Order at ¶ 14. Will this then require a determination of competency to be able to enter the waiver? How about a jury trial on competency prior to the evidentiary hearing? Remember, the issue a judge of the District Court is being asked to determine is if the defendant is mentally retarded. What happens if the defendant fails to enter a waiver on the record, does the Motion to Quash control or is the matter set for trial pursuant to *Murphy*? These are the type of problems that can arise when courts seek to complicate otherwise simple procedures to try to answer a question that has already been answered.

¶ 7 Furthermore, creating a waiver of a Constitutional right and a new interlocutory appeal seems unusually "legislative" to me, especially where we do not have a better statutory basis than we do here. House Bill 2635, the original bill passed by our Legislature in 2002 prior to gubernatorial veto and the U.S. Supreme Court's decision in *Atkins v. Virginia*, did not provide for such a pretrial ruling, did not require a personal waiver, and did not create an interlocutory appeal. Currently, House Bill 2710 is pending in the 2004 session of the Legislature and it too is mute on these issues. I would be extremely hesitant to take the position this Court has now taken knowing the Oklahoma Legislature's only pronouncement concerning these issues addresses the issue of mental retardation in the context of a trial, consistent with our decision in *Murphy*. Does the Court truly believe it is saving "time and expense" by creating a new right of appeal before trial even begins? Does the Court really want to force a criminal defendant into the Hobson's choice of waiving his or her right to have a jury decide the issue of mental retardation in order to obtain this pretrial determination? How will that waiver impact his or her ability to present the issue of mental retardation at sentencing, if the pretrial proceedings do not result in the desired results? Will this Court then abandon the legal principle of *res judicata*, forget the ruling on the interlocutory appeal because "death is different", and allow a defendant to have another bite at the apple? I highly doubt our Legislature will agree with this approach. However, that is a choice they will ultimately have to make.

¶ 8 The clear and simple way to address this Application for Writ of Prohibition is to say the question asked was answered in *Murphy*. Pursuant to the procedure and instructions adopted in *Murphy* the issue of mental retardation is tried to the jury during the penalty phase of a capital murder case. The duty of the trial judge at a post-trial "*Atkins* hearing is to determine whether or not the factual determinations relating to the issue of mental retardation were imposed by the jury under the influence of passion, prejudice, or any other arbitrary factor". See *Murphy*, 2002 OK CR 32, ¶ 35, 54 P.3d at 569. This Court then reviews all issues at one time as a part of the direct appeal.

---

2. The Court does not even consider the fact the State also has a right to a jury trial. As we have previously held in *Crawford v. Brown*, 1975 OK CR 114, 536 P.2d 988, "Accordingly, we do not find it unconstitutional to predicate the informed, intelligent waiver of such a right upon the consent of the State's attorney and the judge of the trial court. The refusal of either to consent will result in a trial by jury as guaranteed to the defendant by our Constitution (Article II, Sections 19 and 20). The State in our adversary criminal justice system, has a valid and legitimate interest in trying its case before that body which both history and the framers of our Constitutions have felt produced the fairest end result-the jury." *Id.* at 990. *See also, Valega v. City of Oklahoma City*, 1988 OK CR 101, 755 P.2d 118, 119.

¶ 9 Appellate courts are tasked with the dual responsibility to adjudicate cases and manage the appellate system to ensure fair, objective, speedy and efficient disposition of cases. The court should be a part of the solution and not the problem in maintaining an efficient, responsive judicial system. In *Murphy* this Court ensured a defendant's right to due process was preserved and a jury, having received all relevant evidence both prior to and during the commission of the crime, was afforded the responsibility to determine the issue of mental retardation. The procedure adopted today appears to distrust the ability of a jury in capital cases to make that important decision. Rather, it seeks to provide the judges of this Court, under the guise of *de novo* review, the power to decide who shall be eligible for the death penalty. I have more faith in the men and women who perform the valuable service of jurors. I believe they follow their oaths and the instructions of the court in making those hard decisions. We should honor that service. Members of this Court are ill equipped to serve as a fact finder on these issues. Our job is to determine if the evidence supports the decision of the fact finder.

¶ 10 As previously stated, I acknowledge the authority of the Court to establish the pre-trial procedure. I find no authority to create an interlocutory appeal. And, I believe this procedure will create more issues than it resolves while denying a speedy and efficient determination of the trial on the merits before a jury.